## Case No. 16,245.

### UNITED STATES v. SEAGRIST et al.

[4 Blatchf. 420.] [1]

Circuit Court, S. D. New York. March 31, 1860.

REVOLT OF SEAMEN — NATIONAL CHARACTER OF VESSEL—HOW PROVED—JURISDICTION OF FEDERAL COURTS—WHAT ARE "HIGH SEAS."

1. On the trial of an indictment for an endeavor to make a revolt on board of an American vessel in a foreign port, under the 2d section of the act of March 3d, 1835 (4 Stat. 776), it is not necessary to give documentary proof establishing the national character of the vessel, but it is sufficient to prove orally that she is owned by an American citizen.

2. A vessel lying in a harbor, fastened to the shore by cables, and communicating with the land by her boats, and not within any inclosed dock, or at any pier or wharf, is, within the common acceptance of the term, on the "high seas," outside of low water mark on the coast.

[Cited in Ex parte Byers, 32 Fed. 407.]

3. The act of March 3d, 1825 (4 Stat. 115, § 5), giving directly to the courts of the United States jurisdiction over certain classes of offences committed on board of American vessels in foreign ports, was not designed to abrogate or curtail the jurisdiction of the United States over crimes committed at sea, but to remove doubts whether that jurisdiction could be exercised when the locus in quo was a locked harbor, adapted by nature or artificially to protect vessels from the perils of an open coastage.

4. The act of 1825 does not afford the exclusive rule of decision with respect to offences which are not alleged and proved to have been committed on or against the persons of individuals on ship board.

5. The crime of endeavoring to make a revolt on board of a vessel, is one against the master of the vessel; and it is sufficient to charge it in the words of the act of 1835, to give the court cognizance of it. even within the requirements of the act of 1825.

[Cited in U. S. v. Huff, 13 Fed. 637.]

[6. Cited in U. S. v. Stone, 8 Fed. 252, to the point that if the different acts mentioned in section 2 of the act of March 3, 1835, constituted different offences, they may yet be united in the same indictment.]

This was an indictment against [Henry Seagrist and others], four of the crew of the American brig Humming-bird, of New York, for an endeavor to make a revolt and mutiny on board of her, in the harbor of Palermo,

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

Sicily, on the 31st of December, 1859. On the trial they were convicted, and they now moved for a new trial.

James L. McLane, Asst. Dist. Atty.
James Ridgway, for prisoners.

BETTS, District Judge. The ground urged for a new trial, in this case, is the alleged misdirection of the court to the jury, that the port of Palermo, where the offence is charged by the indictment to have been committed, is a place within the admiralty jurisdiction of the United States. The objection would have been more appropriately taken in arrest of judgment, but the validity of it may as well be determined in either mode of proceeding.

The objection that no documentary proof, such as a bill of sale, or registry, was put in, establishing the national character of the vessel, cannot avail the defendants. The master testified that she was owned in this city, by American citizens, and it was only necessary for the prosecution to prove that she was American property, to support the indictment. It was not, in any way, an issue, on the trial, whether she was entitled to the privileges of an American bottom, under our revenue laws. The only fact involved was whether she was American property, and of this there can be no doubt. 3 Kent, Comm. 130, 132, 150.

The main point contested on the trial and on this motion, rests on an exception to the jurisdiction of the court. The generic offence of endeavoring to make a revolt, was first declared to be a crime, by the United States laws, in the crimes act of April 30th, 1790 (1 Stat. 115, § 12); and the courts have recognized the offence as sufficiently described and specified under that denomination, to be subject to judicial cognizance. U. S. v. Kelly [Case No. 15,516]; Id. 11 Wheat. [24 U. S.] 417; U. S. v. Smith [Case No. 16,337]. It was decided in the First circuit, that the offence, when committed within a harbor of the United States, was punishable under the act, and that it was not a condition to the jurisdiction of the court, that the offence should have been committed on the high seas. U. S. v. Hamilton [Id. 15,291]. In U. S. v. Keefe [Id. 15,509], Judge Story ruled, that an indictment under the act of 1790, for an endeavor to make a revolt, was triable in the circuit court, although the offence was committed in a foreign port, the criminal jurisdiction in admiralty being deemed to be, in a general sense, co-ordinate as to place with the civil jurisdiction. This last decision was made in 1824, and the argument on the present motion maintains that the act of congress of March 3d, 1825 (4 Stat. 115, § 5), in giving directly to the courts of the United States jurisdiction over certain classes of offences committed on board of American vessels in foreign ports, necessarily limits the jurisdiction to those specified cases, and that an endeavor to make a mutiny on board of a ship in a foreign port is not an offence on any person, and is, therefore, not subjected to the cognizance of the courts of the United States, by the provisions of that act. The language of the statute is: "If any offence shall be committed on board of any ship or vessel belonging to any citizen or citizens of the United States, while lying in a port or place within the jurisdiction of any foreign state or sovereign, by any person belonging to the company of said ship, or any passenger, on any person belonging to the company of said ship, or any other passenger, the same offence shall be cognizable and punishable by the proper circuit court of the United States."

In considering this objection, it is worthy of notice, that the place where the vessel lay at the time, although called the port of Palermo, was not within any enclosed dock, nor actually at any pier or wharf. She lay out in what was called the harbor, fastened to the shore by cables. She communicated with the land by her boats. This position of the vessel would leave her, within the common acceptance of the term, on the "high seas," outside of low water mark on the coast. U. S. v. Hamilton [Case No. 15,290]; The Abby [Id. 14]; U. S. v. Kessler [Id. 15,528].

The act of 1825 was not designed to abrogate or curtail the jurisdiction of the United States over crimes committed at sea, but manifestly to remove doubts whether that jurisdiction could be exercised when the locus in quo was a locked harbor, adapted by nature or artificially to cover and protect vessels from the perils of an open coastage. I do not find any construction given authoritatively by the courts of the United States, which establishes the doctrine, that the act of 1825 affords the exclusive rule of decision with respect to offences which are not alleged and proved to have been committed on or against the persons of individuals on shipboard.

A case occurred in 1834, before the circuit court in Pennsylvania, in which the judges (Baldwin and Hopkinson) adopted that view of the law, but only decided that larceny within a port in the Bahamas, committed on board of an American ship, was not an offence punishable under the laws of the United States (U. S. v. Morel [Id. 15,807]), because it was an offence against property alone; and the court, in illustration of their conclusion, referred to the act of 1825 as omitting to extend the admiralty jurisdiction over any description of offences within foreign ports, not committed on or against some person. If that suggestion of the court offers the true exposition of the act of 1825, the crime charged in this indictment, and proved on the trial, may, without any impropriety of language, be defined to be one against the master of the vessel, and, being charged in the words of the 2d section of the act of March 3d, 1835 (4 Stat. 776), may be deemed sufficiently alleged, without any more pointed averment. Whart. Cr. Law (2d Ed.) 132. The first count of the indictment charges, that the vessel, owned by a citizen or citizens of the United States, whereof Joseph Davis was then and there

master and commander, being within a foreign port, and within the admiralty and maritime jurisdiction of the United States, the defendants, being four of the crew of the said vessel, "did then and there endeavor to make a revolt," against the peace, &c. In the second count, after the like preliminary averments, it charges that the same parties "did then and there combine and confederate with each other, to make a revolt and mutiny." The third count, after the like preliminary averments, charges that the defendants "did then and there solicit, incite and stir up each other to disobey and resist the lawful orders of the master of the said ship, and to neglect and refuse their proper duty on board thereof, and to betray their proper trust therein." The first section of the act of 1835 defines, in very precise terms, the crimes of revolt and mutiny, and affixes a specific punishment to them; and the second section particularizes the acts of seamen on shipboard which shall subject them to the same punishment, as an endeavor to make a revolt or mutiny. It is practically unimportant whether the provisions of the second section are expounded as so many instances or methods in which the offence of an endeavor to make a revolt or mutiny may be manifested, or whether they are taken distributively, and understood to be so many separate and distinct offences, each being sufficient of itself to sustain an indictment. The three counts of this indictment are so framed as to secure to the United States the advantage of either construction. It appears to me, therefore, that the court did not err in instructing the jury, that if the acts charged in the indictment were satisfactorily substantiated by the evidence, and if the defendants committed those acts with intent to resist the master in the free and lawful exercise of his authority and command on board of the vessel, they would amount, in law, to an endeavor to make a revolt. I also consider that the court was correct in further instructing the jury, that the offences of mutiny, and the endeavor to make a mutiny, specified in the act of 1835, are, as defined in that law, by necessary implication, offences against the person and authority of the master, and that an averment of the crime in the language of the statute, is all that is required to make the charge of the offence complete, within the supposed requirements of the act of 1825, so as to come within the cognizance of the court.

But, independently of that view of the case, the act of 1835, in subjecting the offences therein created or described, to the admiralty and maritime jurisdiction of the court, gives to the court, in my opinion, in relation to those cases, a cognizance co-ordinate with what it could exercise under any antecedent law, in causes of like character.

The motion is, accordingly, overruled, and judgment is pronounced against each defendant, that he pay a fine of ten dollars, and be imprisoned for thirty days.